**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

COSIMA EPIFANI,

      Plaintiff,

v.                                                                              Civ. No. 25-247 GJF/SCY

STATE OF NEW MEXICO, *et al.*,

      Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

This case arises from a complaint for employment discrimination based on national origin and disability brought by Plaintiff Cosima Epifani ("Plaintiff"). Compl., Dkt. No. 1. Although Plaintiff initially proceeded pro se when filing her complaint, counsel appeared on her behalf on July 14, 2025. *See* Notice, Dkt. No. 25. On November 19, 2025, Defendants State of New Mexico, Thirteenth Judicial District Attorney's Office (the "DA's Office"), Barbara Romo ("Romo"), Jessica Martinez ("Martinez"), Melissa Howden ("Howden"), Neil Carson ("Carson"), Andoni Garrote ("Garrote"), Virginia Padilla ("Padilla"), Michael Tapia ("Tapia"), Krissy Fajardo ("Fajardo"), and Eric Valdez ("Valdez") (collectively, "Defendants") filed an *Opposed Motion to Dismiss Plaintiff's Complaint for Employment Discrimination* (ECF No. 49). Plaintiff did not respond to the motion and the deadline for doing so has expired. *See* D.N.M. Local Rule 7.4(a) ("A response must be served and filed within fourteen (14) calendar days after service of the motion."). Defendants filed a *Notice of Completion of Briefing* on December 5, 2025. Notice, Dkt. No. 54. This matter is ready for resolution.

Having considered the motion, complaint, and relevant law, the Court concludes that the motion to dismiss should be granted in part and denied in part. The Court will deny the motion to dismiss Plaintiff's Americans with Disabilities Act claims for hostile work environment, failure to

accommodate, and unlawful demotion against Defendant Thirteenth Judicial District Attorney's Office. The Court will otherwise grant the motion to dismiss.

## I.    STANDARD

According to this District's local rules, the "failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR–Civ. 7.1(b). The Court cannot, however, grant a motion to dismiss based solely on a plaintiff's failure to respond and must consider the merits of the motion. *See Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) ("[W]e conclude that a district court may not grant a motion to dismiss for failure to state a claim merely because [a party] failed to file a response.") (internal quotations omitted). "Consequently, even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Id.* at 1178. Despite Plaintiff's failure to respond, this Court must consider the merits of the motion to dismiss.

When reviewing a complaint under Rule 12(b)(6), the court must accept all well-pleaded allegations as true and construe them in a light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). A court, however, will not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or a formulaic recitation of the elements devoid of facts, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the plaintiff must allege facts stating a claim to relief that is plausible on its face. *Id.* Plausibility means more than a "sheer possibility." *Id.*

If on a motion to dismiss matters outside the pleadings are presented to and considered by the court, the motion generally must be treated as one for summary judgment. Fed. R. Civ. P.

12(d). No conversion is required, however, when the court considers documents incorporated into the complaint by reference and central to the plaintiff's claim, unless their authenticity is questioned. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

A court reviews a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020). If the party moving to dismiss mounts a *facial* attack to jurisdiction, the court assumes the allegations in the complaint are true. *Id.* at 872. On the other hand, if the moving party brings a *factual* attack by producing evidence to contest jurisdiction, the district court has broad discretion to consider affidavits and other documents and even to conduct a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.* Considering jurisdictional evidence "does not convert a Rule 12(b)(1) motion into a summary judgment motion unless resolution of the jurisdictional question is intertwined with the merits." *Id.* (internal quotations omitted).

## II.    FACTUAL BACKGROUND

Plaintiff began working for the Thirteenth Judicial District Attorney's Office in March 2017. Compl. ¶ 1, Dkt. No. 1 at 12 of 29. She was promoted twice during her time there. *Id.* ¶ 5. She was regularly complimented on her work. *Id.* ¶ 6.

In July 2022, however, the attorney she worked with, Eric Valdez, sent her an email (the "Valdez email") saying she should go back to school to learn grammar. *Id.* Plaintiff forwarded the email to her supervisor at the time and requested a meeting. *Id.* ¶ 7. On July 26, 2022, she had a meeting about the Valdez email with Defendants Garrote and Tapia, her supervisor, and an attorney. *Id.* ¶ 9. At the meeting, Garrote raised concerns directed at Plaintiff. *Id.* ¶ 10. Later, Valdez called her to apologize, stating that Garrote pressured him to call her. *Id.* ¶ 11, Dkt. No. 1

at 13 of 29. Subsequently, the Valdez email was deleted from Plaintiff's email server and the folder where she had saved it. *Id.* ¶ 12.

Shortly thereafter, Tapia replaced Plaintiff's direct supervisor. *Id.* ¶ 14. Tapia began chronic verbal abuse of Plaintiff by saying in front of other employees that she was always forgetting things because she had dementia. *Id.* ¶ 15. Tapia on numerous occasions told her that she was "worthless." *Id.* ¶¶ 16-17.

In September 2022, Tapia and Carson, one of the attorneys Tapia worked with directly, wrongly accused Plaintiff of being absent without leave. *Id.* ¶ 18. Plaintiff provided her supervisors with evidence to show she had approved leave for the time she was away from the office, as well as emails demonstrating her presence in the office. *Id.* ¶ 19. She also provided the DA's Office with a September 21, 2022 letter from her doctor, which explained that she "is affected by osteoarthritis and rheumatoid arthritis of the knees affecting her ability to walk distances" and asked that she not be on the court run schedule. *Id.* ¶ 20, Dkt. No. 1 at 13-14 of 29. In October 2022, Plaintiff provided the DA's Office with an October 25, 2022 letter from a different doctor explaining that she is under care for "Diabetes management" and should "be allowed more frequent breaks as needed to check her blood glucose levels." *Id.* ¶ 21, Dkt. No. 1 at 14 of 29. The letter noted that swings in her blood glucose levels can cause her to have sudden mood swings and change in behavior. *Id.*

Because of her medical conditions, Plaintiff's hands would shake at times. *Id.* ¶ 22, Dkt. No. 1 at 15 of 29. Tapia made fun of her for it and called the attention of others to it as well. *Id.*

On January 26, 2023, Howden and Tapia called Plaintiff into a meeting about an alleged outburst she had. *See id.* ¶ 23. Plaintiff explained that Tapia on numerous occasions accused her of having dementia, commented about her age, called her "worthless," and said it was all a joke.

*Id.* ¶ 24. When asked by Howden about Plaintiff's allegations, Tapia avoided the question, alluded to an apology he made to her about joking, and said she was lying about him calling her "worthless." *Id.* ¶ 25. Howden admonished him that he could not be joking like that with anyone. *Id.* ¶ 26. Howden told Plaintiff she would be required to avail herself of five free counseling sessions offered through the Employee Assistance Program ("EAP") and to tell the representatives, "I'm Italian—I tend to have outbursts at work." *Id.* ¶¶ 27-28. Howden also said to her, "I don't want your basic Italianness to go away. That's who you are, but it doesn't work in the professional environment." *Id.* ¶ 29.

Howden issued Plaintiff a letter on January 30, 2023, alleging that she had an outburst on January 24, 2023, after Tapia asked her to watch the phones to cover for the receptionist who needed to go to a vault to get documents. *See id.* ¶ 30, Dkt. No. 1 at 15-16 of 29. The letter instructed her to avail herself of the five days of EAP sessions and to provide proof of completion no later than April 15, 2023; revoked her privilege of working from home one day per week; and permitted her to submit a written response within five working days. *Id.* ¶¶ 31-33, Dkt. No. 1 at 16 of 29.

The next day, on January 31, 2023, Howden called Plaintiff in for a meeting. *Id.* ¶ 34. Howden said she thought her proposed disciplinary action was too harsh. *Id.* ¶ 36. Howden decided she would not suspend Plaintiff without pay and would not issue a write-up but that Plaintiff still needed to attend the counseling sessions. *See id.* ¶¶ 36-38. Plaintiff reported that Tapia, on a few occasions when she approached him regarding her work, told her to take her thumb out of her ass, and that Tapia told Plaintiff's friend that Plaintiff had been written up for leaving the building. *Id.* ¶¶ 39-40. Howden responded that she should put her complaints in writing so they could address them. *Id.* ¶ 42, Dkt. No. 1 at 17 of 29.

On February 3, 2023, Plaintiff put her complaints in writing in an email to Romo, Howden, Martinez, and Carson. *Id.* ¶ 47, Dkt. No. 1 at 17-19 of 29. She complained about a hostile work environment she had been experiencing since July 2022 based on her age, ethnicity, country of origin, and medical history. *Id.* ¶ 47, Dkt. No. 1 at 17 of 29. She alleged she had been experiencing degrading and belittling comments and harassment that caused a hostile work environment for her. *Id.* at 19 of 29. Plaintiff also discussed the Valdez email, explaining that English is not her first language. *See id.* at 17-18 of 29. She said that, after the meeting about the Valdez email, Valdez apologized, gave her a nice birthday card, and they worked together until the end of August. *Id.*, Dkt. No. 1 at 18 of 29. Next, she asserted that in September 2022, she was called into meetings for "talking loudly" with other employees. *Id.* Additionally, Plaintiff stated in the email that she was given a Formal Reprimand and Disciplinary Action on September 22, 2022, for leaving the office on September 13 and 14, 2022, without informing her supervisor. *Id.* She explained, however, that her supervisor gave her permission to leave early on September 13, 2022, and she was at the hospital for an emergency medical condition on September 14, 2022. *See id.*

In February 2023, Plaintiff requested a meeting with Romo. Compl. ¶ 49, Dkt. No. 1 at 19 of 29. The next month, she sent an email to Romo outlining numerous issues, including being falsely accused of being absent from work without leave in September 2022, the comments by Tapia that she asserted negatively affected her and her job performance, the anger management classes she was required to attend with EAP, and the comments by Howden about her being Italian and tending to have outbursts at work. *See id.* ¶ 50, Dkt. No. 1 at 19-20 of 29. Plaintiff met with Defendants Romo and Martinez on March 14, 2023, but they were both evasive and dismissive of her concerns. *Id.* ¶¶ 55-56, Dkt. No. 1 at 20 of 29. In March 2023, Plaintiff received certification for having completed the five anger management sessions. *Id.* ¶ 57.

In October 2023, Defendant Padilla became Plaintiff's new supervisor. Compl. ¶ 59, Dkt. No. 21 of 29. In February 2024, Defendants Carson and Padilla adjusted Plaintiff's duties, failed to accommodate her medical needs, and began wrongfully attributing errors to her that were beyond her control. *Id.* ¶¶ 60-61. On February 15, 2024, they gave her notice of poor work performance and demoted her to a legal assistant position. *Id.* ¶ 62.

In April 2024, Carson and Padilla met with Plaintiff and required that she sign a document that attributed errors to her that were beyond her control and failed to accommodate her medical needs and that listed tasks that were notably vague with no objective metric for success. *Id.* ¶¶ 65-66. On April 18, 2024, Plaintiff sent an email to Padilla, cc'ing Romo, Martinez, Howden, Fajardo, and Carson, in which she responded to the items listed on the formal written reprimands. *See id.* ¶ 67, Dkt. No. 1 at 21-22 of 29. Among other things, she addressed the audit of her casework and explained that, unlike other employees, when she had been absent for medical reasons, her supervisors did not find her backup assistance. *See id.*, Dkt. No. 1 at 22 of 29. Plaintiff also complained that on February 15, 2024, she was informed that, as of March 4, 2024, she would no longer be allowed to work from home one day per week, even though others were still allowed to work from home, some due to health issues, which she also has. *Id.*

On May 23, 2024, Padilla emailed Plaintiff, directing her to do the mail run. Compl. ¶ 69, Dkt. No. 1 at 23 of 29. Plaintiff responded that her doctor did not want her driving. *Id.* ¶ 70. Padilla and Carson nevertheless decided she needed to start doing the mail run, explaining that the doctor's note was only for the court run. *Id.* ¶¶ 71-73. Padilla issued her a verbal warning. *Id.* ¶ 74. That same day, Fajardo emailed Plaintiff and instructed her to complete a defensive driving course. *Id.* ¶ 75. Plaintiff attempted to complete the course online as a renewal; but, because her renewal period expired, she needed to drive to Santa Fe to complete the driving course. Compl. ¶ 77, Dkt.

No. 1 at 24 of 29. Plaintiff notified Fajardo of the renewal period expiration. *Id.* ¶ 78. Later that day, Carson told Plaintiff that her employment was being terminated. *Id.* ¶ 80.

On July 15, 2024, Plaintiff filed a Charge of Discrimination ("Charge") with the New Mexico Human Rights Bureau (the "Bureau"). Charge, Dkt. No. 1 at 27 of 29. She alleged discrimination on the basis of race, color, disability, and national origin, beginning on June 18, 2022, through December 11, 2023. *Id.* She marked "Continuing Action." *Id.* She asserted both hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1969 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), and the Human Rights Act. *Id.*

The Bureau issued an Order of Non-Determination letter dated September 20, 2024, informing her that she had 90 days from the date of service of the Order to file a notice of appeal to the district court. Letter, Dkt. No. 1 at 28 of 29. The Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a letter dated December 10, 2024, which notified her of her right to sue within 90 days of receipt of the notice. EEOC Letter, Dkt. No. 1 at 26 of 29. Plaintiff received the right-to-sue letter on December 10, 2024. Compl., Dkt. No. 1 at 5 of 29.

Plaintiff filed her complaint for employment discrimination on March 10, 2025. Compl., Dkt. No. 1. She alleges she was discriminated against because of her Italian national origin and because of her physical disabilities (osteoarthritis, rheumatoid arthritis, and diabetes). *Id.* at 4 of 29. She asserts the following claims: (i) violation of Title VII, 42 U.S.C. §§ 2000e to 2000e-17, based on national origin; (ii) violation of the ADA, 42 U.S.C. §§ 12112 to 12117; (iii) violation of Title V, Section 503 of the ADA; (iv) violation of the New Mexico Human Rights Act ("NMHRA"), N.M. Stat. Ann. § 28-1-1 (2000), *et seq.*; and (v) violation of the New Mexico

8

Whistleblower Protection Act ("NMWPA"), N.M. Stat. Ann. § 10-16C-1 (2010), *et seq*. *See* Compl., Dkt. No. 1 at 3-4 of 29.

Defendants moved to dismiss Plaintiff's entire complaint on numerous grounds. Def.'s Mot., Dkt. No. 29. As mentioned, Plaintiff did not respond to the motion and the time for doing so has long since expired.

## III.     ANALYSIS

### A.  Plaintiff's NMHRA claims are time-barred.

Defendants argue that the Court lacks jurisdiction over Plaintiff's NMHRA claims because she failed to file an appeal within 90 days from the date of the Order of Non-Determination. *See* Def.'s Mot. 7-9, Dkt. No. 49. To exhaust administrative remedies under the NMHRA, a person must: (i) file a complaint with the Bureau or the EEOC making sufficient allegations to support the complaint; and (ii) receive an order of non-determination from the Bureau. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶¶ 10-19. Notably, a right-to-sue letter from the EEOC does not substitute for an order of non-determination from the Bureau under New Mexico law. *See id.* ¶ 12 ("Thus, receiving a notice of right to sue from the EEOC does not satisfy the state law requirement of obtaining an order from the Division, nor does such an EEOC notice affect the statutory time limit for filing an appeal from an order of the Division in state court."). The NMHRA provides:

> A person aggrieved by an order of the commission may obtain a trial de novo by filing a notice of appeal in the district court of the county where the discriminatory practice occurred or where the respondent does business. The notice of appeal must be filed *within ninety days from the date of service of the commission's order*.

NMSA § 28–1–13(A) (emphasis added). The "date of service" means "date of mailing" when service is done by mailing. *Herrera v. Las Cruces Public Schools*, 695 F. App'x 361, 371 (10th Cir. June 13, 2017). A district court must dismiss an NMHRA claim if the plaintiff failed to exhaust administrative remedies. *See Mitchell–Carr*, 1999-NMSC-025, ¶ 17.

9

Exhaustion under the NMHRA is a jurisdictional prerequisite to suit. *Id.* ("the timely filing of a notice of appeal from an NMHRA administrative order is effective to give the district court jurisdiction to try the case de novo under Section 28–1–13") (internal quotations omitted). *See also Herrera*, 695 F. App'x at 367 (explaining that whether appellant timely filed her complaint containing NMHRA claim was jurisdictional issue, so Rule 12(b)(1) applies). When a court decides a motion to dismiss for lack of jurisdiction based on written materials, the plaintiff need only make a prima facie showing. *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992); *Vigil v. City of Espanola*, No. 1:20-cv-01265-PJK-SMV, 2021 WL 124499, at *1 (D.N.M. Jan. 13, 2021) (explaining that, where defendants brought motion to dismiss NMHRA claim for failure to exhaust administrative remedies, motion was challenge to subject-matter jurisdiction under Rule 12(b)(1), so plaintiff needed to prove jurisdictional facts by preponderance of evidence).

Plaintiff attached to her Complaint both the Charge of Discrimination she filed with the Bureau and the Order of Non-Determination letter she received from the Bureau. *See* Charge, Dkt. No. 1 at 27 of 29; Letter, Dkt. No. 1 at 28-29 of 29. The Court may consider these documents in evaluating either a facial or factual attack. *See Tellabs*, 551 U.S. at 322; *Baker*, 979 F.3d at 872. The Order of Non-Determination letter is dated September 20, 2024. Letter, Dkt. No. 1 at 28-29 of 29. The letter notified Plaintiff that she had 90 days from the date of service of the letter to file a notice of appeal in the district court. *Id.* Defendants thus argue that Plaintiff had 90 days from September 20, 2024, to file her appeal, which is a deadline of December 19, 2024. Plaintiff offered no evidence or argument to rebut the assertion that her NMHRA claim is time-barred.

Plaintiff did not file her complaint until March 10, 2025, well more than 90 days after service of the Order of Non-Determination. Plaintiff failed to point to any allegations or evidence

10

to rebut the evidence that service of the Order of Non-Determination letter was on September 20, 2024. The Court concludes on this record that Plaintiff's NMHRA claims are time-barred. *Cf. Haynes v. Presbyterian Healthcare Services*, No. 34,489, 2015 WL 4366698, at \*1 (N.M. App. June 30, 2015) (unpublished) (affirming district court's dismissal of NMHRA claim for failure to file timely appeal where appellant filed complaint in district court 91 days after New Mexico Human Rights Commission issued its waiver). The Court will therefore dismiss Plaintiff's NMHRA claims.

### B. Title VII and ADA claims

#### 1. Plaintiff's Title VII and ADA claims are not time-barred based on failure to file suit within 90 days of receipt of EEOC determination letter.

Defendant argues that Plaintiff's Title VII and ADA claims are time-barred because she filed them on the ninety-first day after receiving the EEOC right-to-sue letter. Def.'s Mot. 5-7, Dkt. No. 49. Although Plaintiff failed to respond to this argument, the Court nonetheless rejects it.

To exhaust administrative remedies, an individual claimant must timely file a charge of discrimination with the EEOC and receive a right-to-sue letter. *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004). Once an individual receives notice of the right to sue from the EEOC, she has 90 days in which to file suit. *See* 42 U.S.C. § 2000e–5(f)(1). The 90-day limit begins to run on the date the complainant actually receives the EEOC right-to-sue notice. *Witt v. Roadway Exp.*, 136 F.3d 1424, 1429 (10th Cir. 1998). It is undisputed that Plaintiff alleged in her Complaint that she received the Notice of Right to Sue letter on "12/10/2024," and that she filed her Complaint on March 10, 2025. Compl. Dkt. 1 at 1, 5 of 29. By the Court's calculation, 90 days from December 10, 2024, is March 10, 2025. Defendant is therefore incorrect in asserting that Plaintiff untimely filed suit on the 91st day.

**2. Claims based on discrete acts occurring on or before September 18, 2023, are time-barred and Plaintiff failed to exhaust all her Title VII and ADA claims by not including them in her Charge of Discrimination.**

Defendants argue that Plaintiff failed to exhaust claims arising from acts that occurred more than 300 days prior to the date she filed her July 15, 2024 Charge. Def.'s Mot. 20-24, Dkt. No. 49. They contend that Plaintiff only exhausted claims that occurred from September 18, 2023-July 15, 2024, and which she specifically delineated in her Charge. *Id.* at 23.

Under Title VII, a plaintiff must file an EEOC charge within 300 days after the alleged unlawful employment discrimination occurred. *See* 42 U.S.C. § 2000e-5(e)(1) ("charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred"); *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1202 (10th Cir. 2003) (citing *National R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 114-15 (2002)). This timing requirement is a prerequisite to filing a civil lawsuit. *Croy*, 345 F.3d 1202.

Each discrete act of discrimination or each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice. *See Morgan*, 536 U.S. at 114-15. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" such that each "incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. Unlike a claim of discrimination based on a discrete act that itself is actionable, hostile work environment claims are based on the cumulative effect of individual acts. *Id.* at 115. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117.

The purpose of the exhaustion requirement is to give notice of the alleged violation to the defendant and to give the EEOC a chance to conciliate the claim. *Smith v. Cheyenne Retirement*

*Investors L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018). Courts liberally construe the plaintiff's charge, but it must contain facts concerning the discriminatory and retaliatory actions underlying each claim. *Id.* The question is whether the conduct alleged in the case falls within the scope of the administrative investigation that would reasonably grow out of the administrative charge. *Id.*

Plaintiff filed her Charge on July 15, 2024. Three hundred calendar days prior to that date is September 19, 2023, so any claims based on discrete acts occurring on or before September 18, 2023, are outside the requisite 300-day window. Consequently, claims based on discrete acts occurring on or before September 18, 2023, are time-barred and should be dismissed. In her Complaint, Plaintiff alleges that the alleged discriminatory acts occurred on "06/2022-01/2023, 01/26/2023, 02/15/2024, 3/04/2024, 04/2024, 05/23/2024." Compl., Dkt. No. 1 at 4 of 29. To the extent Plaintiff's complaint relies on discrete acts, and not an act making up her hostile work environment claim, the acts occurring during June 2022 through January 2023 and on January 26, 2023 are time-barred.

As to the discriminatory conduct of which she complains, Plaintiff asserted in her Statement of Claim the following discriminatory conduct: termination of her employment, failure to accommodate her disability, unequal terms and conditions of her employment, retaliation, and "Discriminatory comments, hostile work environment." Compl., Dkt. No. 1 at 4 of 29. She also asserted that on February 15, 2024, Defendants Howden and Padilla demoted her to the position of legal assistant. *Id.* ¶ 62, Dkt. No. 1 at 21 of 29. Defendants argue that she failed to exhaust her claims based on her demotion, failure to accommodate, unequal terms and conditions, and her termination. Notably, Defendants do not argue that Plaintiff failed to exhaust her hostile work environment claims.

Starting with her termination, the Court agrees that she did not exhaust a discrimination claim arising from her termination. Defendant Carson notified Plaintiff that her employment was terminated on May 23, 2024. *See* Compl. ¶¶ 69-80, Dkt. No. 1 at 23-24 of 29. Despite waiting to file her Charge until July 15, 2024, Plaintiff nonetheless failed to include her termination in her statement of harm. Charge, Dkt. No. 1 at 27 of 29. Termination is a discrete employment act. *See Morgan*, 536 U.S. at 114. Plaintiff thus failed to exhaust a discrete termination-of-employment-discrimination claim based on disability, national origin, or retaliation. *Cf. Smith*, 904 F.3d at 1166 (explaining that, despite liberal review, plaintiff failed to include in her EEOC charge that her termination was motivated by filing a 2012 charge of discrimination, so complaint based on that claim must be dismissed); *Mitchell v. City and County of Denver*, 112 F. App'x 662, 668 (10th Cir. Oct. 12, 2004) (concluding that plaintiff only exhausted failure-to-promote racial discrimination claim where he failed to include facts in EEOC charge about treatment in manner or degree sufficient to allege hostile work environment); *Martin v. Central States Emblems, Inc.*, 150 F. App'x 852, 856-57 (10th Cir. Oct. 11, 2005) (affirming dismissal of racial discrimination claim for unlawful termination for failure to exhaust administrative remedies where plaintiff did not allege termination due to race discrimination in EEOC charge); *Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (affirming summary judgment on Title VII claim based on termination of employment because it was discrete, independent action for which plaintiff had to exhaust administrative remedies prior to filing suit).

Next, Defendant contends that Plaintiff failed to exhaust her claims based on the failure to accommodate her disability by failing to include it in her Charge. Plaintiff alleges in her Complaint that in April 2024 Defendants Carson and Padilla provided a document to her that attributed errors that were beyond her control and failed to accommodate her medical needs. Compl. ¶¶ 64-65, Dkt.

14

No. 1 at 21 of 29. She further alleges that in April 2024 she complained to her supervisors in an email that as of March 4, 2024, she would no longer be allowed to work from home one day per week, while others were permitted to work from home due to health issues that she also has. *See id.* ¶ 67, Dkt. No. 1 at 21-22 of 29. Additionally, she asserts that on May 23, 2024, Defendants Padilla, Carson, Howden, Fajardo, and Martinez required her to start doing the mail run even though her doctor did not want her driving. *Id.* ¶¶ 69-80, Dkt. No. 23-24 of 29. Plaintiff's Charge did not include any mention of the May 23, 2024 incident in which she was required to do the mail run or that the requirement to do the mail run amounted to a failure to accommodate. She thus did not exhaust her administrative remedies as to a failure-to-accommodate claim arising from May 23, 2024. Plaintiff, however, alleged in her Charge that her doctor asked that she work from home and take additional breaks as accommodation. She described the lack of work-from-home accommodation in her complaint. Construing the Charge liberally as it must, the Court finds that Plaintiff sufficiently alleged in her Charge a failure-to-accommodate claim arising from work-from-home requests.

With respect to her demotion, Plaintiff alleges that on February 15, 2024, she was given notice of poor work performance and demoted. Compl. ¶ 62, Dkt. No. 1 at 21 of 29. In her Charge, she says she "was demoted from my position because of my health." Charge, Dkt. No. 1 at 27 of 29. Defendants argue that she failed to allege with the requisite specificity that her demotion was motivated either by her national origin or her designated disabilities. Def.'s Mot. 23, Dkt. No. 49. Contrary to Defendants' argument, Plaintiff exhausted the claim that she was demoted based on her disability. Because her demotion occurred within 300 days of her filing her Charge, the Court will not dismiss an unlawful demotion claim based on failure to exhaust. The Court agrees with Defendant, however, that Plaintiff did not allege that her demotion was based on national origin

discrimination in the Charge or the Complaint. Nor did she allege that her demotion was in retaliation for having engaged in protected activity. Rather, she was specific that her demotion was due to her health. To the extent she attempts to bring a claim for unlawful demotion based on national origin or retaliation, the Court will dismiss the claim under Rule 12(b)(6).

Finally, with respect to Plaintiff's allegation that she suffered from unequal terms and conditions of her employment, Defendants argue that she failed to allege any such conduct in her Charge. The allegations the Court finds exhausted fall within an ADA failure to accommodate, ADA discrimination based on demotion, or hostile work environment claim based on disability and national origin. To the extent Plaintiff attempts to bring a separate claim based on unequal treatment, she failed to allege any other specific "unequal terms and conditions" in her Charge, and therefore, she failed to exhaust a separate unequal-terms-and-conditions claim and any such claim will be dismissed.

### 3. The Court will dismiss Title VII and ADA claims against individual defendants and State of New Mexico.

Defendants argue that Plaintiff only named the "13th Judicial District Attorney's Office" in her Charge of Discrimination, so Defendants Romo, Martinez, Howden, Carson, Garrote, Padilla, Tapia, Fajardo, and Valdez are entitled to dismissal of Plaintiff's Title VII and ADA claims against them. Def.'s Mot. 18, Dkt. No. 49. Plaintiff did not refute this argument. The Court agrees that dismissal of the Title VII and ADA claims against the individual employees is appropriate for failure to exhaust administrative remedies against them. Moreover, the official capacity claims would be merely the equivalent of a claim against their employer – the Thirteenth District Attorney's Office. *See Benton v. Town of South Fork*, 587 F. App'x 447, 451 (10th Cir. Sept. 24, 2014) (explaining that district court properly dismissed Title VII claims against eight town employees where none of individuals functioned as actual employer, for that role was carried out

16

by town, and official capacity claims would serve as equivalent of claim against town). Additionally, the personal capacity suits under Title VII and the ADA brought against them should be dismissed, as such claims are precluded by the statute.[1] *See Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996) ("personal capacity suits against individual supervisors are inappropriate under Title VII"); *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 744 (10th Cir. 1999) ("[W]e now hold that the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition.").[2]

Defendant also moves to dismiss as a defendant the State of New Mexico for failure to allege any plausible claim against it. Def.'s Mot. 24, Dkt. No. 49. Indeed, Plaintiff lists the State of New Mexico as a defendant but alleges that she worked for the Thirteenth Judicial District Attorney's Office. Compl. 2 & ¶ 1, Dkt. No. 1 at 2 & 12 of 29. She fails to allege any facts supporting a plausible claim against the State of New Mexico. Moreover, in her Charge, she only listed the Thirteenth Judicial District Attorney's Office. *Id.* at 27 of 29. The Court will therefore dismiss Defendant State of New Mexico from the case under Rule 12(b)(6).

### 4. Plaintiff stated a plausible claim for hostile work environment based on her disability under ADA but not based on national origin under Title VII.

Defendants assert that Plaintiff cannot state a claim for Title VII or ADA hostile work environment based on national origin or disability discrimination. *See* Def.'s Mot. 9-12, Dkt. No.

---

[1] Supervisors may be named in their official capacity, but only as a way to sue the employer, which is superfluous where, as here, the employer is subject to suit directly in its own name. *See Lewis v. Four B Corp.*, 211 F. App'x 663, 665 n.2 (10th Cir. Aug. 11, 2005).

[2] Given that the Court is dismissing Plaintiff's claims against the individual defendants, the Court need not consider Defendants' alternative arguments that Plaintiff failed to state claims against each individual defendant with the requisite specificity. *See* Defs.' Mot. 25-27, Dkt. No. 49.

49.[3] Defendants target two elements necessary to state a hostile work environment claim – severe and pervasive harassment and harassment based on protected class.

As relevant here, Title VII prohibits an employer from discriminating against any person with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's" national origin. 42 U.S.C. § 2000e–2(a)(1). Title VII prohibits subjecting an employee to a hostile work environment because of a protected class, including national origin. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (1986); *Sidlo v. Millercoors, LLC*, 718 F. App'x 718, 726, 727-28 (10th Cir. Mar. 7, 2018); *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1262-63 (10th Cir. 2005). To state a hostile work environment claim based on national origin discrimination, the plaintiff must show under the totality of the circumstances: (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment stemmed from national origin animus. *See Witt*, 136 F.3d at 1432. A plaintiff must demonstrate that the work environment was both objectively and subjectively hostile or abusive. *Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012). A court should consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

Defendants argue that Plaintiff failed to allege enough facts to establish that the alleged harassment based on her national origin was sufficiently severe and pervasive to alter the terms and conditions of her working environment. The Court agrees. In the Complaint, Plaintiff alleges that, during a meeting about an outburst she had, Defendant Howden told Plaintiff to inform the

---

[3] Defendants similarly argue that Plaintiff failed to state a plausible NMHRA claim. The Court declines to consider the merits of the NMHRA claim, because it dismisses the NMHRA claim on exhaustion grounds.

EAP representative that, "I'm Italian—I tend to have outbursts at work." Compl. ¶ 28, Dkt. No. 1 at 15 of 29. At the same meeting Ms. Howden also said: "I don't want your basic Italianness to go away. That's who you are, but it doesn't work in the professional environment." *Id.* ¶ 29. Those are the only allegations Plaintiff makes specifically linked to her Italian heritage. These two isolated comments, made during the same meeting, fall well short of what is necessary to prove severe or pervasive discrimination. *Cf. Morris*, 666 F.3d at 656-68 (concluding that plaintiff did not make sufficient showing of pervasively or severe hostile work environment through few isolated incidents of sporadic slurs; must be steady barrage of opprobrious comments); *Sidlo*, 718 F. App'x at 728 (explaining that conduct plaintiff alleged failed to meet hostile work environment standard because he pointed to only one incident directly connected to national origin discrimination).

Plaintiff also alleges that Defendant Valdez in July 2022 sent her an email saying she should go back to school to learn grammar. Compl. ¶ 6, Dkt. No. 1 at 12 of 29. In February 2023, Plaintiff complained about the incident in a letter, noting that grammar is not her strong suit because English is her second or third language. *Id.* ¶ 47, Dkt. No. 1 at 17-18 of 29. Plaintiff, however, did not directly tie the grammar comment to animus by Defendant Valdez to her national origin. A hostile work environment claim requires more than disrespectful, rude, chilly, or otherwise disagreeable behavior. *See Samoza v. Univ. of Denver*, 513 F.3d 1206, 1217-18 (10th Cir. 2008).

Plaintiff's allegations are not enough to demonstrate that she suffered harassment based on her Italian heritage that was so severe or pervasive that it altered a term, condition, or privilege of her employment and created an abusive working environment. *Cf. Sidlo*, 718 F. App'x at 728-29 (holding that one incident directly connected to national origin discrimination and other incidents

19

of being initially denied second voucher for safety glasses and having limited computer access, which he did not tie to national origin discrimination, were not enough to show unwelcome harassment based on national origin sufficiently pervasive to alter term, condition, or privilege of his employment). And again, Plaintiff did not respond and therefore failed to supply any arguments or case law in support of the plausibility of her Title VII national origin claim. The Court will therefore dismiss the claim for failure to adequately state a plausible claim.

Plaintiff also asserts an ADA hostile work environment claim. The Tenth Circuit has recognized hostile work environment claims under the ADA. *Lanman v. Johnson County*, 393 F.3d 1151, 1156 (10th Cir. 2004), *overruled on other grounds by statute as stated in EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 924 (9th Cir. 2018). To prevail on an ADA hostile work environment claim, the plaintiff must show that harassment based on her disability was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *See Neri v. Board of Education for Albuquerque Public Schools*, 860 F. App'x 556, 566 (10th Cir. Jun. 14, 2021); *Okoye v. Perez*, Civ. No. 21-105 KG/JFR, 2021 WL 6066696, at *6-7 (D.N.M. Oct. 19, 2021). Defendants argue that Plaintiff failed to plead facts of severe or pervasive harassment based on her disability.

Plaintiff's complaint includes certain factual allegations that arguably pertain to her ADA hostile work environment claim. Plaintiff lists her disability or perceived disability as osteoarthritis ("OA"), rheumatoid arthritis ("RA"), and diabetes. Compl., Dkt. No. 1 at 4 of 29. She provided her employer with doctor's notes in September and October 2022 stating that her OA and RA affected her ability to walk distances, so she should not be on the court run schedule, and that her diabetes can cause sudden mood swings and change in behavior. *Id.* ¶¶ 20-21, Dkt. No. 1 at 13-14 of 29. Her doctor's letter also notified her employer that she should be allowed more frequent

breaks to check her blood glucose levels. *Id.* ¶ 21. Plaintiff additionally alleges that Defendant Tapia began "chronically abusing" her verbally by saying in front of other employees in the office that she was always forgetting things because she had dementia. Compl. ¶¶ 15, 50, Dkt. No. 1 at 13, 19 of 29. He also called her "worthless" on numerous other occasions. *See id.* ¶¶ 16-17, 24, Dkt. No. 1 at 13, 15 of 29. On a few occasions when she approached him during work hours about her work, Defendant Tapia told her to get her thumb out of her ass. *Id.* ¶ 39, Dkt. No. 1 at 16 of 29. In the complaint, Plaintiff further asserts that, because of her medical conditions, her hands would shake at times, and when that occurred around Defendant Tapia, he made fun of her for it and called the attention of others to it as well. *Id.* ¶ 22, Dkt. No. 1 at 15 of 29. According to Plaintiff, she was admitted to the emergency room on September 14, 2022, because of her blood sugar and blood pressure, yet she was given a formal reprimand and disciplinary action for leaving without informing her supervisor. *Id.* ¶ 47, Dkt. No. 1 at 18 of 29. Additionally, Plaintiff alleged that Defendants Carson and Padilla adjusted her duties, failed to accommodate her medical needs, attributed errors to her that were beyond her control, and shortly thereafter demoted her for poor work performance. *See id.* ¶¶ 60-62, Dkt. No. 1 at 21 of 29. Finally, she alleges that on May 23, 2024, Defendant Padilla changed her duties to require her to do the mail run, despite her doctor's note recommending that she not do the court run and that Plaintiff said her doctor did not want her driving. *See id.* ¶¶ 69-73, Dkt. No. 1 at 23 of 29. Defendants Fajardo, Padilla, Howden, and Martinez nonetheless persisted in requiring her to conduct the mail run. *See id.* ¶¶ 75-80.

On a motion to dismiss, all reasonable inferences must be construed in favor of Plaintiff. Based on the totality of the allegations, the Court finds that Plaintiff has stated a plausible claim for ADA hostile work environment based on her disability. In contrast to her national origin claim, Plaintiff has alleged more than isolated comments, but rather repeated and consistent verbal

harassment related to her health and disability and requiring her to perform tasks that she alleges exceeded her medical restrictions. The Court will therefore deny the motion to dismiss Plaintiff's ADA hostile work environment claim. *Cf. Fox v. Gen. Motors Corp.*, 247 F.3d 169, 173-74, 179 (4th Cir. 2001) (concluding plaintiff presented evidence of objectively severe and pervasive workplace harassment based on evidence that employer refused to accommodate employee's disability, employer forced him to perform tasks beyond his medical restrictions, and employees engaged in constant verbal harassment of him and ostracized disabled workers).

**5. Plaintiff failed to state claim for Title VII and ADA retaliation.**

"Title VII makes it unlawful to retaliate against an employee for opposing practices made unlawful by the statute." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 924-25 (10th Cir. 2016) (citing 42 U.S.C. § 2000e-3(a)). A plaintiff establishes retaliation either by directly showing that retaliation played a motivating part in the employment decision, or indirectly by relying on the three-part framework set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). To make a prima facie case of retaliation, a plaintiff must show: (1) she engaged in protected opposition to discrimination; (2) she subsequently suffered adverse action by the employer; and (3) there was a causal connection between the protected activity and the materially adverse action. *See id.* at 1193. While a plaintiff need not set forth a prima facie case for each element in the complaint, she must set forth a plausible claim. *Id.* Retaliatory conduct violates Title VII if it alters the employee's compensation, terms, conditions, or privileges of employment in a way that brings about some disadvantageous change in an employment term or condition, or in other words, injures the employee. *See Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354-55 (2024) (explaining that transfer can constitute adverse action if plaintiff shows some harm respecting identifiable term or condition of

employment). To prove Title VII retaliation, a plaintiff must show but-for causation, in other words, that the unlawful retaliation would not have occurred in the absence of unlawful action by the employer. *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360 (2013).

Defendants argue that Plaintiff's retaliation claim must be dismissed based on the second and third prongs. *See* Def.'s Mot. 12-14, Dkt. No. 49. As to the second prong, they argue that the only challenged employment action that could arguably be materially adverse is Plaintiff's termination. As discussed *supra*, Plaintiff failed to exhaust her Title VII or ADA retaliation claim arising from her termination. Thus, the Court need not consider the merits of whether she plausibly alleged that her termination constituted unlawful retaliation. Moreover, even had she exhausted her termination claim, she did not allege that her termination in May 2024 was because of her protected activity.

Significantly, Plaintiff failed to respond to Defendant's motion, leaving the Court bereft of assistance as to what other adverse actions she bases her retaliation claim upon. Even construing the complaint with inferences in Plaintiff's favor, the complaint fails to allege what terms and conditions of her employment were negatively affected because of her protected activity. For example, while a demotion adversely affects a term and condition of employment, Plaintiff failed to allege that her demotion was a result of her protected activity. Rather, she indicated it arose from discrimination based on her health and disability. Consequently, Plaintiff has failed to state a claim for retaliation under Title VII or the ADA. *Cf. Khalik*, 671 F.3d at 1193 ("Plaintiff's general assertions of discrimination and retaliation, without any details whatsoever of events leading up to her termination, are insufficient to survive a motion to dismiss.").

### C. NMWPA claim will be dismissed.

Defendants also seek dismissal of Plaintiff's NMWPA claim for failure to allege that she engaged in protected whistleblowing activity. *See* Def.'s Mot. 15-17, Dkt. No. 49. As relevant here, the NMWPA prohibits a public employer from taking any retaliatory action against a public employee because the employee "communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act." N.M. Stat. Ann. § 10-16C-3(A). Section 10-16C-2(E) defines the term "unlawful or improper act" as "a practice, procedure, action or failure to act on the part of a public employer that" either "(1) violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state; (2) constitutes malfeasance in public office; or (3) constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public." *Id.* § 10-16C-2(E). Under the NMWPA, only communications that benefit the public are protected under the NMWPA. *Lerma v. State*, 2025-NMSC-033, ¶¶ 3, 35, 578 P.3d 1111. Public employee disclosures of government misconduct that can stand separate and apart from an individualized personnel dispute may be protected under the Act. *Id.* ¶ 36.

Defendants argue that Plaintiff's allegations are based on her individual employment dispute and do not amount to a matter of public concern covered by the NMWPA. Plaintiff offered no argument in support of her claim and has not identified which of her communications pertain to matters of public concern. Having considered the allegations of the Complaint, the Court concludes that Plaintiff failed to adequately allege that she brought to her employer's attention a matter of public concern. Rather, her complaint is limited to her own personnel grievance. The Court will therefore dismiss Plaintiff's NMWPA claim against all Defendants. *See id.* ("a public

employee's disclosure of illegality or wrongdoing qualifies for protected whistleblower status, if otherwise eligible, so long as the disclosure confers a benefit on the public, irrespective of which benefit—public or personal—may be said to predominate").

**IT IS THEREFORE ORDERED** that Defendants' *Opposed Motion to Dismiss Plaintiff's Complaint for Employment Discrimination* (**ECF No. 49**) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendants' request to dismiss Plaintiff's ADA claims for hostile work environment, failure to accommodate, and unlawful demotion is **DENIED** as to Defendant Thirteenth District Attorney's Office.

2. Defendants' request to dismiss all other claims and all Defendants except the Thirteenth Judicial District Attorney's Office is **GRANTED**.

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*